La Crosse National Bank vs. Wilson.

LA CROSSE NATIONAL BANK, Respondent, vs. WILSON, imp., Appellant.

*September 7 — September 24, 1889.*

*Fraudulent .conveyances: Garnishment: Drafts and notes: Assets formerly reached by creditors' bill: Action, legal or equitable? Jury trial: Constitutional law.*

1. A finding of the trial court that a conveyance of land was without consideration and fraudulent as to the creditors of the grantor, is *held* to be sustained by the evidence.
2. Drafts and promissory notes may be reached by garnishment.
3. After land had been conveyed without consideration and in fraud of the grantor's creditors, the grantee sold the same. *Held*, that drafts and promissory notes, the avails of such sale, were subject to garnishment by said creditors even though they had passed out of the immediate possession and control of the fraudulent grantee and had come into the hands of other persons who held them for such grantee.
4. A proceeding by garnishment to reach non-leviable assets formerly reached by creditors' bill, is essentially equitable, and the issues therein are triable by the court.

APPEAL from the Circuit Court for *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action was commenced by the plaintiff, the *La Crosse National Bank*, against John H. Weston, to recover $6,805.12, with interest at ten per cent. from September 9, 1885. Frank G. Bigelow and the Milwaukee National Bank were summoned as garnishees. The Milwaukee National Bank answered, and admitted, in effect, that June 12, 1886, it received and still had in its possession a sight draft dated New York, June, 9, 1886, drawn by *B. M. Wilson* on F. G. Bigelow, of Milwaukee, to which draft were attached two notes dated La Crosse, June 5, 1886, executed by McDonald Bros., for $7,000 and $8,000, respectively, payable to the order of the said *Wilson* at the Fourth National Bank

of New York City on or before September 1, 1887 and 1888, respectively, both of which notes were indorsed by *B. M. Wilson*, and to which draft was also attached an assignment, executed by *B. M. Wilson* to F. G. Bigelow, of mortgage bearing date January 8, 1886, and recorded in Clark county, Wisconsin; that said bank was directed to deliver said notes and assignment to Bigelow upon the payment by him of said sight draft; that said draft, notes, and assignment of mortgage were claimed by one *B. M. Wilson*. The garnishee Bigelow answered, and in effect admitted that he held said mortgage executed by McDonald Bros. (and said two notes), and that he received the same from *B. M. Wilson*, who claimed to be the owner thereof. *B. M. Wilson*, who was impleaded therein, filed a claim therein to said sight draft, two notes, mortgage, and the assignment thereof, as her property, and alleged that the defendant, Weston, had no interest whatever therein or any part thereof.

The plaintiff took issue upon this answer of *B. M. Wilson*, and in effect alleged that said draft, notes, mortgage, and assignment were the property of the said Weston, and were the avails of lands conveyed by said Weston to *B. M. Wilson* without consideration and with intent to defraud, hinder, and delay his creditors, including the plaintiff; and that said Weston procured said lands to be conveyed to said McDonald Bros., who purchased the same in good faith, and in part payment therefor gave said notes and mortgage, and that the same were subject to the debts of said Weston, including the plaintiff's; that said *B. M. Wilson's* title thereto was void as against said creditors; and prayed a lien thereon for the amount of the plaintiff's debt.

The issues thus joined were ordered for trial before the court without a jury, against the objection of said *Wilson*. The cause was thereupon tried by the court without a jury, and the court found as matters of fact, in effect, that the

plaintiff recovered judgment against said Weston, May 24, 1888, for $8,690.04, upon an indebtedness which accrued to the plaintiff prior to September, 1884; that in September, 1884, said Weston delivered to said *B. M. Wilson* a deed of conveyance, previously executed and acknowledged, of a large tract of pine land in Clark county, Wisconsin; that said Weston was then insolvent; that said *B. M. Wilson* paid no consideration for said lands; that said deed of conveyance was placed on record, and said *B. M. Wilson* held the property thereby conveyed in secret trust for said John H. Weston; that in January, 1886, said Weston negotiated a sale of said real estate to the McDonald Bros., of La Crosse, and said *B. M. Wilson* thereupon executed to them a deed of conveyance thereof; that in part payment of said sale said McDonald Bros. executed and delivered to said *B. M. Wilson* said notes and mortgage described in the answers of the garnishees; that up to the time of said sale and the execution and delivery of said notes and mortgage, said *B. M. Wilson* had made no payment whatsoever on said lands, and that she received the price of said lands paid therefor by said McDonald Bros., including said notes and mortgage, for the use and benefit of said Weston, and held the same in her name in secret trust for him; that there is evidence in the case tending to show that subsequently *B. M. Wilson* paid to said Weston $4,000 on account of said lands, of which $1,000 was repaid to her from the proceeds of a discount of a note given by said McDonald Bros. in part payment on said purchase.

And as conclusions of law the court found, in effect, that the conveyance of said lands by said Weston to said *Wilson* was fraudulent and void as to the creditors of said Weston; that the title of said *Wilson* to the notes and mortgage mentioned and described in the answers of the garnishees was and is void as to the creditors of said Weston; that whether or not said *B. M. Wilson* is entitled to an equity in said

notes and mortgage held by said garnishees, on account of any payment she may have made as above stated, is not here decided, since the amount of the notes and mortgage in the hands of said garnishees is very largely in excess of the plaintiff's demand in this action; that the plaintiff is entitled to judgment that said garnishees pay to the plaintiff out of the proceeds of said notes and mortgage, when collected, the sum of $8,690.04, with interest from May 24, 1888, and also the costs of this garnishee action; and that the plaintiff recover the costs of this action against said *B. M. Wilson;* and that judgment be entered accordingly.

From the judgment so entered the claimant, *B. M. Wilson,* appeals.

For the appellant there was a brief by *Finches, Lynde & Miller,* attorneys, and *E. P. Smith,* of counsel, and the cause was argued orally by *B. K. Miller, Jr.,* and *E. P. Smith.* They contended, *inter alia,* that garnishment is a *legal action,* does not reach an equitable liability, and is always triable by a jury. Drake on Attach. sec. 457, and cases cited; *Harrell v. Whitman,* 19 Ala. 135. That it is a legal, not an equitable, remedy, is shown by the history of the Wisconsin garnishment law. See Terr. Stats. of 1839, pp. 165–168; R. S. 1849, ch. 112, secs. 32–36; R. S. 1858, ch. 130, secs. 34, 35, 37–41, 44, 50, 52, 53; Laws of 1862, ch. 249; Laws of 1864, ch. 200; R. S. 1878, sec. 2768. The last clause of sec. 2768 did not change the former law, because fraudulent conveyances could always be attacked by garnishment. *Keep v. Sanderson,* 2 Wis. 42; *S. C.* 12 id. 352; Drake on Attach. sec. 458; *Healey v. Butler,* 66 Wis. 16; *First Nat. Bank v. Knowles,* 67 id. 372–390. That the relief afford by garnishment proceedings is exclusively *legal* is apparent from the fact that no claim or property is subject to garnishment unless it is subject to an execution. *Storm v. Cotzhausen,* 38 Wis. 139; Drake on Attach. sec. 482, and cases cited; R. S. secs. 2753, 2765; *Dorestan v.*

La Crosse National Bank vs. Wilson.

*Krieg*, 66 Wis. 614; *Smith v. Davis*, 1 id. 447. An *equitable* liability cannot be reached by garnishment. *Brande v. Bond*, 63 Wis. 140–144; Drake on Attach. sec. 547. The issue in garnishment was triable by a jury under Terr. Stats. of 1839 (see p. 167, sec. 8) and always afterward. *Adams v. Filer*, 7 Wis. 318. And the constitution (art. I, sec. 5) secures the right of trial by jury as it existed when the constitution was adopted. *Millett v. Hayford*, 1 Wis. 401; *Norval v. Rice*, 2 id. 22.

The notes and mortgage in question were not subject to garnishment in the hands of *Miss Wilson's* agents. "Where an agent is summoned as a trustee of a person other than his principal, he cannot be held, and the question whether he has in his possession any goods, effects, or credits of his principal cannot be inquired into; for it cannot be said that the trustee is either indebted or has in his possession property of the defendant." McConnell on Trustee Process, sec. 333; *Wells v. Greene*, 8 Mass. 504; *Cramer v. Flint*, 18 Pick. 140; *Gould v. Newburyport R. Co.* 14 Gray, 472; *Skowhegan Bank v. Farrar*, 46 Me. 293; *Bowler v. E. & N. A. R. Co.* 67 id. 395; *Walcott v. Keith*, 22 N. H. 196; *Collins v. Brigham*, 11 id. 420; *Hale v. Foley*, 47 Vt. 260; *Hewitt v. Wheeler*, 22 Conn. 558; *Casey v. Davis*, 100 Mass. 124.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *F. C. Winkler*.

CASSODAY, J. It appears from the undisputed evidence in this case that in June, 1882, the defendant, Weston, received a deed of conveyance of the 1,400 acres of land in Clark county in question, and other real estate, from one Schofield and wife, reciting a consideration of $25,000; that the same was then recorded; that in the spring of 1884 said Weston was doing business in La Crosse, and was in-

debted to the plaintiff in this action, and owned the 1,400 acres of land in Clarke county mentioned; that at that time he was interested in a lumber company at Fort Madison, in the state of Iowa, which had in its employ the said *B. M. Wilson*, then a young lady between nineteen and twenty years of age, known by the name of *Birdie M. Wilson;* that May 8, 1884, said Weston and wife drew a deed of conveyance of the 1,400 acres of land mentioned, to said *B. M. Wilson*, reciting a consideration of $15,000; that said deed was executed and acknowledged by said Weston and wife June 19, 1884, and thereupon placed in the Traders' Bank in Chicago, and held by that bank for about two weeks in escrow; that August 23, 1884, said *Wilson* sent the deed to the register to be held pending negotiations for a mortgage, and only to be recorded upon notice given; that September 15, 1884, she wrote to the register to record the deed; that the same was recorded September 17, 1884; that September 10, 1884, said *B. M. Wilson* executed a mortgage to Abner Coburn on said 1,400 acres of land, conditioned for the payment of $10,000, and the same was recorded September 27, 1884; that September 10, 1884, said *B. M. Wilson* executed another mortgage on said 1,400 acres of land to said Weston for $8,000, and the same was recorded September 23, 1884; that the deed from *B. M. Wilson* to McDonald Bros. was executed December 21, 1885, and recorded January 14, 1886, and conveyed the 1,400 acres of land in question, and recited a consideration of $36,000; that January 8, 1886, McDonald Bros. executed and delivered to said *B. M. Wilson* a mortgage on the 1,400 acres of land in question, conditioned for the payment of $15,000, and the same was recorded January 21, 1886; that January 8, 1886, McDonald Bros. executed another mortgage to *B. M. Wilson* on said 1,400 acres of land, conditioned for the payment of $8,000, and recorded February 12, 1886, and that that mortgage was assigned by *B. M. Wilson* to A.

Healy & Sons February 8, 1886, and the assignment thereof recorded Febuary 12, 1886; that in the matter of all of said several negotiations, conveyances, and mortgages, the said John H. Weston acted as and for the said *B. M. Wilson*. These facts with the evidence in the record are sufficient to justify the findings of the court to the effect that the conveyance of the 1,400 acres of land to *Wilson* by Weston was without any consideration, and fraudulent and void as to the creditors of the latter,— including the plaintiff,— and hence that the alleged title of *Wilson* to the draft, notes, and mortgage in the hands of the garnishees was void as to Weston's creditors, including the plaintiff.

The contention that the draft, notes, etc., could not be reached by garnishment by reason of their character as such is certainly untenable. *Storm v. Cotzhausen*, 38 Wis. 139. In that case a draft payable to the order of the judgment debtor and in the hands of the garnishee was reached on garnishment. A creditor is expressly authorized to proceed by garnishment against any person having " any property whatever, real or personal, in his possession or under his control, belonging to such creditor's debtor." Sec. 2752, R. S. " The words ' personal property ' include money, goods, chattels, *things in action, and evidences of debt.*" Subd. 3, sec. 4972, R. S. This language is broad enough to include the draft and notes in question. *Storm v. Cotzhausen*, 38 Wis. 144; *State v. Coyle*, 41 Wis. 270; *Wayland University v. Boorman*, 56 Wis. 660. Garnishment is based upon the theory that the property of the debtor in the possession or under the control of the garnishee is not in such a condition as to be seized on execution. Sec. 2753, R. S. In fact, the affidavit for garnishment must state that such debtor " has not property liable to execution sufficient to satisfy the plaintiff's demand." *Ibid*. That section, as amended, extends to " any cause of action mentioned in sec. 2731." Laws of 1885, ch. 286. This last section pre-

scribes what an affidavit for an attachment must contain.
But the statute is still more specific on the point in con-
troversy. It provides that "from the time of the service
of the summons upon the garnishee he shall stand liable to
the plaintiff to the amount of the property, moneys, *credits,
and effects* in his possession or under his control, belonging
to the defendant, or in which he shall be interested, to the
extent of his right or interest therein, and of all debts due,
or to become due, to the defendant, except such as may be
by law exempt from execution. *Any property, moneys,
credits, and effects held by a conveyance or title void as to
creditors of the defendant, shall be embraced in such liabil-
ity.*" Sec. 2768, R. S. The addition to that section by
amendment was in furtherance of the same purpose. Sec. 2,
ch. 86, Laws of 1881. The words in italics, in connection.
with the other provisions of the statutes cited, clearly evince
a purpose to make the remedy by garnishment as effectual
in reaching non-leviable assets, things in action, evidences
of debt, credits, and effects, and in fact any property held
by any sort of conveyance or title void as to the creditors
of the principal defendant, as the old creditors' bill in
chancery. Such is the logical result of previous decisions
of this court. *Mullen v. Reinig,* 72 Wis. 391; *First Nat.
Bank v. Knowles,* 67 Wis. 389; *Sutton v. Hasey,* 58 Wis. 556.
As indicated in one of these cases, the real issue for trial in
this garnishee action, therefore, was whether the deed from
Weston to *Wilson* was fraudulent and void as to Weston's
creditors, including the plaintiff; that is to say, Was it
made with the intent to hinder, delay, or defraud such
creditors? The court found that it was. This being so,
the draft and *notes,* as a part of the avails of the fraudulent
transaction, were liable in garnishment for the plaintiff's
debt. No question of any *bona fide* holder for value is in-
volved. The mere fact that such avails had passed from
the immediate possession and control of the fraudulent

vendee and had come into the hands of the garnishees, who held the same for her, in no way militates against their being reached by garnishment; otherwise the effectiveness of the process would depend upon the ignorance or craftiness of the perpetrators of the fraud instead of the establishment of the fraud itself. In such cases regard must be had to the substance of the transaction, instead of the mere form of the device resorted to in order to conceal the intent. We must hold that a sufficient amount of the draft, notes, and mortgage to satisfy the plaintiff's claim was liable to garnishment.

It is claimed that such garnishment is exclusively a legal remedy, and hence that the constitution guarantied to *Miss Wilson* a jury trial as a matter of right, which the court refused to grant. Sec. 5, art. I, Const. of Wis. Of course the right of trial by jury remains inviolate as it existed before the adoption of the constitution, and extends to all cases at law. There may be cases of garnishment where such right exists, but, as already indicated, the garnishment in this case was to reach non-leviable assets, things in action, evidences of debt. We do not understand that in such cases a party was, prior to the constitution, entitled to a jury trial as a matter of right. On the contrary, the remedy in such cases at that time was by creditor's bill or proceedings in the nature of a creditor's bill, and essentially equitable. The mere fact that the same object is now secured by a more direct and simple proceeding given by statute, does not change the relation of the parties nor the essential nature of the remedy which formerly existed. *Buford v. Holley*, 28 Fed. Rep. 680; *Shepard v. Eldy*, 2 N. Y. Supp. 534; *McElrath v. U. S.* 102 U. S. 440; *Barton v. Barbour*, 104 U. S. 126. This is not "an issue of fact in an action for the recovery of money only, or of specific real or personal property," within the meaning of the statute. Sec. 2843, R. S. We find no statute requiring an

issue in garnishment like the one at bar to be tried by a jury. It follows that no error was committed in refusing a jury trial.

*By the Court.*— The judgment of the circuit court is affirmed.