VILLAGE FOOD & LIQUOR MART, Plaintiff-Respondent,

v.

H & S PETROLEUM, INC., a Wisconsin Corporation, d/b/a Horizon Marathon and Shell, Defendant-Appellant.

Supreme Court

*No. 00–2493. Oral argument January 9, 2002.—Decided July 9, 2002.*

2002 WI 92

(Also reported in 647 N.W.2d 177.)

For the defendant-appellant there was a brief by *John M. Bjelajac* and *Hartig, Bjelajac, Cabranes & Koenen, S.C.,* Racine, and *Robert E. Hankel* and *Knuteson, Powers & Wheeler, S.C.,* Racine, and oral argument by *Robert E. Hankel.*

For the plaintiff-respondent there was a brief by *Catherine M. Rottier, Sarah A. Zylstra* and *Boardman, Suhr, Curry & Field, LLP,* Madison, and oral argument by *Catherine M. Rottier.*

¶ 1. WILLIAM A. BABLITCH, J. In this case, we are asked to decide whether the Wisconsin Constitution protects a litigant's right to a jury trial in a civil suit for damages under the Unfair Sales Act, Wis. Stat. § 100.30 (1999–2000).[1] In a civil case that involved allegations of unfair sales practices, the defendant, H & S Petroleum (H & S), made a demand to the circuit court for a jury trial, which the plaintiff, Village Food & Liquor Mart (Village Food), moved to strike.

¶ 2. The Racine County Circuit Court, Dennis J. Barry, Judge, held that H & S had no constitutionally protected right to a jury trial and granted Village Food's motion. The court of appeals granted H & S leave to appeal the non-final order and subsequently certified the question to this court. We now reverse the ruling of the circuit court and hold that the Wisconsin Constitution protects the right to a trial by jury for a civil suit brought under the Unfair Sales Act.

I

¶ 3. In 1999, Village Food brought suit against H & S, alleging a series of violations of the Unfair Sales Act, Wis. Stat. § 100.30. Specifically, Village Food claimed that on 103 different occasions, the Horizon Marathon gas station violated Wis. Stat. §§ 100.30(2)(am)1m.c and 100.30(3), the minimum mark-up laws regarding the sale of motor vehicle fuel.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

Horizon Marathon was owned by H & S, and Horizon Marathon competed with Village Food in the motor vehicle fuel market.

¶ 4. In its plea for relief, Village Food sought $2000 in damages for each violation, and for each day of continued violation, pursuant to § 100.30(5m).[2] Village Food also sought costs and attorney fees, but made no claim for temporary or permanent injunctive relief. H & S demanded a trial by jury in the matter.

¶ 5. Village Food moved to strike H & S's jury demand, arguing that the Wisconsin Constitution does not guarantee the right to a jury trial in a civil suit brought under the Unfair Sales Act. The circuit court agreed with Village Food and granted the motion to strike. Relying on *State v. Ameritech Corp.,* 185 Wis. 2d 686, 517 N.W.2d 705 (Ct. App. 1994), *aff'd* 193 Wis. 2d 150, 532 N.W.2d 449 (1995), the circuit court held that, because there was no common law cause of action in 1848 sufficiently similar to the present one, the right to a jury trial was not protected by Article I, Section 5 of the Wisconsin Constitution.

¶ 6. The court of appeals granted H & S leave to appeal the non-final order and certified the appeal to this court. We accepted the certification, and we now reverse the circuit court's ruling.

---

[2] Wisconsin Stat. § 100.30(5m) provides:

Any person who is injured or threatened with injury as a result of a sale or purchase of motor vehicle fuel in violation of sub. (3) may bring an action against the person who violated sub. (3) for temporary or permanent injunctive relief or an action against the person for 3 times the amount of any monetary loss sustained or an amount equal to $2,000, whichever is greater, multiplied by each day of continued violation, together with costs, including accounting fees and reasonable attorney fees. . . .

## II

¶ 7. Article I, Section 5 of the Wisconsin Constitution governs a civil litigant's right to a jury trial in a Wisconsin court.[3] That section states:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. . . .

Wis. Const. art. I, § 5. Here, we are asked if Article I, Section 5, guarantees H & S the right to a jury trial. Whether there is a constitutionally guaranteed right to a jury trial for a particular cause of action requires us to interpret a provision of the state constitution, which we do independently of the lower courts. *State v. City of Oak Creek*, 2000 WI 9, ¶ 18, 232 Wis. 2d 612, 605 N.W.2d 526.

¶ 8. We approach this question in two parts. We first set forth the test by which we determine if there is a constitutional right to a jury trial for a given cause of action. Second, we apply the test to the cause of action in the present case to determine if the constitutional

---

[3] Although H & S does attempt to draw comparisons between state court interpretation of Article I, Section 5 of the Wisconsin Constitution and federal Seventh Amendment jurisprudence, we note that it has been long-decided—and the parties agree—that the Seventh Amendment to the U.S. Constitution does not apply to actions in state court. *Pearson v. Yewdall*, 95 U.S. 294, 296 (1877); *see also Green Spring Farms v. Spring Green Farms Assocs. Ltd. P'ship*, 172 Wis. 2d 28, 33 n.2, 492 Wis. 2d 392 (Ct. App. 1992).

right to a jury trial is protected. In the end, we conclude that H & S is entitled to a jury trial under the test set forth in this opinion.

A

¶ 9. In *Ameritech,* the court of appeals set forth a two-part test for assessing statutory causes of action under Article I, Section 5. The court of appeals stated that "[a] party has a constitutional right to have a statutory claim tried to a jury when: (1) the statute codifies an action known to the common law in 1848; *and* (2) the action was regarded as at law in 1848." *Ameritech,* 185 Wis. 2d at 690. A negative answer to either question would mean that the jury trial right is not constitutionally guaranteed.[4] We agree that a two-part test is required; however, we conclude that, in light our prior case law interpreting Article I, Section 5, a different test is required under the first prong.

¶ 10. Article I, Section 5 of the Wisconsin Constitution guarantees that the right to a trial by jury "shall remain inviolate, and shall extend to all cases at law . . . ." This section clearly indicates that *non-statutory* causes of action at law, where a jury trial was guaranteed before the passage of the state constitution,

---

[4] This court granted review in *State v. Ameritech Corp.,* 185 Wis. 2d 686, 517 N.W.2d 705 (Ct. App. 1994), but the vote was split evenly over whether to affirm or reverse the decision of the court of appeals. Justices Steinmetz, Wilcox, and Geske would have affirmed the court of appeals, while Chief Justice Heffernan, Justice Day, and Justice Bablitch would have reversed the court of appeals. Then-Justice Abrahamson did not participate in the decision. *See State v. Ameritech Corp.,* 193 Wis. 2d 150, 151, 532 N.W.2d 449 (1995).

would continue to have a guaranteed right to a jury trial attached even after the passage of the constitution.[5]

¶ 11. It certainly follows then that, as the *Ameritech* court concluded, a cause of action created *by statute* after 1848 will have a constitutionally guaranteed right to a jury trial attached if that statute *codifies* a claim that existed in the common law before the adoption of the constitution. We conclude, however, that this requirement from *Ameritech*—that the statute must specifically "codify" a prior common law cause of action before the right to a jury trial is warranted—interprets our prior case law and the state constitution too narrowly. Instead, consistent with our prior case law, we conclude that a party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848 and (2) the action was regarded at law in 1848. *See Upper Lakes Shipping, Ltd. v. Seafarers' Int'l Union,* 23 Wis. 2d 494, 503, 128 N.W.2d 73 (1963); *Gen. Drivers & Helpers Union Local 662 v. WERB,* 21 Wis. 2d 242, 251–52, 124 N.W.2d 123 (1963); *Town of Burke v. City of Madison,* 17 Wis. 2d 623, 635, 117 N.W.2d 580 (1962);

---

[5] This court contemplated as much in *Gaston v. Babcock,* 6 Wis. 490 [*503], 494 [*506] (1887), stating:

[T]he constitution provides that the right of trial by jury shall remain inviolate.

We suppose that this expression must have reference to the state of the law as it existed at the formation of the constitution, and mean that this right shall continue as it was at the time of the formation and adoption of the constitution by the people of this State or to speak, perhaps, with greater precision that it shall remain as full and perfect as it was at that time. (Citation omitted).

*Powers v. Allstate Ins. Co.,* 10 Wis. 2d 78, 89, 102 N.W.2d 393 (1960); *see also State v. Hansford,* 219 Wis. 2d 226, 237, 580 N.W.2d 171 (1998).

¶ 12. As we stated in *Bekkedal v. City of Viroqua,* 183 Wis. 176, 192, 196 N.W. 879 (1924), when we were considering the jury trial right as it related to a special tax assessment:

> From an early day it was held that the constitutional provision, preserving inviolate the right of trial by jury preserves that right inviolate *as it existed at the time of the adoption of the constitution.* The matter of special assessments and reassessments is purely a statutory proceeding, relates to taxation, and there was at common law no right of jury trial. Therefore, unless the statute itself makes provision for a jury trial, the parties are not entitled thereto in a proceeding of the kind now before us. (Emphasis added).

We have articulated this principle in a number of other cases as well. *See N.E. v. DHSS,* 122 Wis. 2d 198, 203, 361 N.W.2d 693 (1985); *Gaston v. Babcock,* 6 Wis. 490 [*503], 494 [*506] (1857); *Norval v. Rice,* 2 Wis. 17 [*19], 22 [*29] (1853).

¶ 13. Breaking this test down, we first conclude that a party has a right to have a statutory claim tried to a jury if the cause of action created by the statute existed, was known to, or recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848. Previous decisions of this court support this test. For example, in *Bekkedal,* we held that a litigant had no right to a jury trial in an action challenging a municipal road construction assessment because the action did not exist in 1848 and there was no statutory provision providing for such a right. *Bekkedal,* 183 Wis. at 192-93. Similarly, in *N.E.,* we held that there was no right to a jury trial in a juvenile delinquency proceeding, because such proceedings did not exist at the time

that the Wisconsin Constitution was adopted. *N.E.,* 122 Wis. 2d at 203. In each case, we found that the party did not have a constitutional right to have a statutory claim tried to a jury because the cause of action created by the statute did not exist, was not known, and was not recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848. *See also Gen. Drivers,* 21 Wis. 2d at 252; *Bergren v. Staples,* 263 Wis. 477, 481–83, 57 N.W.2d 714 (1953).

¶ 14. We emphasize that application of this test will not result in affording the right to a jury trial in all statutory actions in which the legislature is silent with respect to the right of a jury trial. A party will only have a constitutional right to have a statutory claim tried to a jury when the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848. For new statutory schemes, the legislature retains the flexibility to create an appropriate fact-finding procedure—including the right to a jury trial—if the legislature finds it appropriate. *See Bergren,* 263 Wis. at 483.

¶ 15. Second, consistent with the second prong in *Ameritech,* we also conclude that the party seeking the jury trial must additionally show that the action existed "at law." Our cases support *Ameritech*'s holding in this respect. In *Town of Burke,* 17 Wis. 2d 623, we recognized that the action at issue—a contest to a referendum election—may have existed at the time the state constitution was enacted, but that the remedies available at the time for such a challenge were obtained through writs of quo warranto, mandamus, or other equitable actions—not legal actions. Similarly, in 1889, this court analyzed a garnishment action in *La Crosse National Bank v. Wilson,* 74 Wis. 391, 399, 43 N.W. 153

(1889), where we recognized that garnishment cases existed prior to 1848, but noted that the type of garnishment in this case—that of non-leviable assets—would have been remedied by creditor's bills or other equitable proceedings. In both *Town of Burke* and *La Crosse National Bank* we held there was no protected right to a trial by jury.

¶ 16. Thus, the constitutional language and our previous interpretations of this language lead us to the following two-part test: a party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848; and (2) the action was regarded as at law in 1848. We now apply that test to the present case.

B

¶ 17. To determine if the right to a jury trial is preserved in this case, we apply the above test to the statute in question—the Unfair Sales Act, Wis. Stat. § 100.30. Under this test, we must determine first if the cause of action created by § 100.30 existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848, and if so, we must then determine whether the action was one that was regarded as at law in 1848. If both questions can be answered affirmatively, then H & S has a constitutionally guaranteed right to a trial by jury. If either question is answered in the negative, the constitutional right is not guaranteed.

¶ 18. We begin by examining the contours of Wis. Stat. § 100.30. Section 100.30 sets forth a statutory scheme which forbids retailers, distributors, and whole-

salers of certain types of goods (namely alcohol, tobacco products, and motor vehicle fuel) from selling their merchandise at an artificially low price in order to attract patronage and thereby cause harm to competing businesses and to consumers of those products. In enacting the statute, the legislature noted that such practices tend to cause commercial dislocations, interfere with free commerce, and mislead consumers. Wis. Stat. § 100.30(1).

¶ 19. To prevent this commercial practice, the legislature created a pricing scheme, whereby wholesalers, retailers and distributors of the specified goods are required to mark up the selling price of those specified goods in accordance with a formula.[6] This formula varies with respect to the type of entity involved (whole-

---

[6] The formula in question in this case states:

> "[C]ost to retailer" means . . . [i]n the case of the retail sale of motor vehicle fuel by a person other than a refiner or a wholesaler of motor vehicle fuel at a retail station, the invoice cost of the motor vehicle fuel to the retailer within 10 days prior to the date of sale, or the replacement cost of the motor vehicle fuel, whichever is lower, less all trade discounts except customary discounts for cash, plus any excise, sales or use taxes imposed on the motor vehicle fuel or on its sale and any cost incurred for transportation and any other charges not otherwise included in the invoice cost or the replacement cost of the motor vehicle fuel, plus a markup of 6% of that amount to cover a proportionate part of the cost of doing business; or the average posted terminal price at the terminal located closest to the retailer plus a markup of 9.18% of the average posted terminal price to cover a proportionate part of the cost of doing business; whichever is greater.

Wis. Stat. § 100.30(2)(am)1m.c. The "average posted terminal price" is defined as:

saler, retailer, or distributor), the type of product, and where the good is sold (from a retail station or otherwise).

¶ 20. The legislature created several possible remedies for a violation of the Unfair Sales Act. The primary cause of action under the Unfair Sales Act is brought by the district attorney or the Wisconsin Department of Agriculture, Trade, and Consumer Protection (the Department) as a quasi-criminal forfeiture action. Wis. Stat. § 100.30(4). Additionally, the Department may issue a cease and desist order, bring an action to enforce the cease and desist order, or bring an action for an injunction against the offending party. Wis. Stat. § 100.30(5).

¶ 21. The civil action asserted by Village Food in the present case was created by the legislature in 1997. *See* Wis. Stat. § 100.30(5m); 1997 Wis. Act 55, § 24. This private cause of action allows a person[7] who is injured by a violation of the Unfair Sales Act to bring a civil action against the violator for damages or for injunctive relief. *Id.* The private cause of action applies only to sales of motor vehicle fuel. *Id.*

¶ 22. With the above in mind, we start with the first part of our test: whether H & S had a constitu-

---

the average posted rack price, as published by a petroleum price reporting service, at which motor vehicle fuel is offered for sale at the close of business on the determination date by all refiners and wholesalers of motor vehicle fuel at a terminal plus any excise, sales or use taxes imposed on the motor vehicle fuel or on its sale, any cost incurred for transportation and any other charges that are not otherwise included in the average posted rack price.

Wis. Stat. § 100.30(2)(a).

[7] Under the Wisconsin Statutes, " 'Person' includes all partnerships, associations and bodies politic or corporate." Wis. Stat. § 990.01(26).

tional right to have its Wis. Stat. § 100.30(5m) claim tried to a jury because the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848. We conclude that this first prong is met.

¶ 23. H & S contends that the first prong is met because the Unfair Sales Act is analogous to causes of action that existed at law in 1848. Specifically, H & S points to several cases that were initiated before 1848, which H & S contends are comparable to the present case, and where jury trials were afforded. *See Getty v. Rountree,* 2 Pin. 379 (Wis. 1850); *Moore v. Kendall,* 2 Pin. 99 (Wis. 1849); *Rich v. Johnson,* 2 Pin. 88 (Wis. 1849); *Wood v. Folmer,* 1 Pin. 509 (Wis. Terr. 1845); *Vliet v. Rowe,* 1 Pin. 413 (Wis. Terr. 1844). H & S suggests the present action is closely related to business fraud, and torts such as cheating, fraud, deceit, and business slander were recognized in the common law at the time of the state constitution's adoption. We are not persuaded by these particular comparisons.

¶ 24. All of these cases involve causes of action that are different than the cause of action at issue under the Unfair Sales Act. *Vliet,* 1 Pin. 413, was a slander action by one person who had given false testimony in a trial before a justice of the peace; *Wood,* 1 Pin. 509, was an action for trespass that involved the taking of a wooden raft; *Moore,* 2 Pin. 99, was a replevin action where one party sought recovery of goods that had been levied by the sheriff; and *Rich,* 2 Pin. 88, was a breach of covenant of title.

¶ 25. The only case cited by H & S that we find somewhat similar to the one at bar is *Getty,* 2 Pin. 379, which involved fraud and the breach of an implied warranty in the sale of a pump. However, *Getty* is similar only because it involves a tort action between

two business entities for monetary damages, but the similarity in the cause of action ends there.

¶ 26. H & S, however, persuasively points us to the well-recognized *Commentaries on the Law of England* wherein Sir William Blackstone included a chapter on "Offences Against Public Trade." 4 William Blackstone, *Commentaries on the Laws of England*, ch. 12, at 154–60 (1778). H & S suggests that many of the offenses listed can be categorized as types of "business fraud" and "business torts" and asks that we take a general approach in comparing them to the present cause of action. We have reviewed this chapter of Blackstone's *Commentaries* and find that the first prong is met: H & S had a constitutional right to have its statutory claim tried to a jury because the cause of action created by the statute existed, was known, and was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848.

¶ 27. Most notable among Blackstone's public trade offenses are the common law crimes of forestalling the market,[8] regrating,[9] and engrossing.[10] Although

---

[8] "Forestalling the market" is defined as:

> buying or contracting for any merchandise or victual coming in the way to market, or dissuading persons from bringing their goods to market; or dissuading persons from bringing their goods or provisions there; or persuading them to enhance the price, when there: any of which practices make the market dearer to the fair trader.

4 William Blackstone, *Commentaries on the Laws of England*, ch. 12, at 158–59 (1778).

[9] Blackstone defines "regrating" as "the buying of corn, or other dead victual, in any market, and selling it again in the same market, or within four miles of the place. . . . For this also enhances the price of the provisions, as every successive seller must have a successive profit." *Id.* at 159.

[10] "Engrossing" is defined by Blackstone as the "buying up

H & S did not cite these crimes specifically in argument to this court, we note that these causes of action are of the same "nature" as the present cause of action under the Unfair Sales Act. *See General Drivers,* 21 Wis. 2d at 252 (quoting *NLRB v. Laughlin,* 301 U.S. 1, 48 (1937)). These offenses were designed to prevent private citizens from trading outside of England's regulated mercantile system.[11] They were enforced to ensure that revenue was generated for the holders of the public market and that dealers and speculators were unable to corner the market. These offenses are clearly forerunners of modern unfair trade practice statutes, as each involves the prohibition of deliberate manipulation of market prices by a market participant in a controlled market.

¶ 28. The cause of action under the Unfair Sales Act involves allegations of a similar unfair trade practice, that is, a violation of a minimum price requirement. Essentially, the unfair trade practice involves price cutting in a controlled market.

> [S]elling below cost is really an act of unfair competition. . . . Sales below cost, it has been stated, are prohibited because "ruinous competition by lowering prices has been recognized as an illegal medium of eliminating weaker competitors," and because "in many lines of industry larger combinations of capital through lower costs and through cutting prices below costs have driven smaller merchants out of business."

Rudolf Callmann, *The Law of Unfair Competition,*

---

large quantities of corn or other dead victuals, with the intent to sell them again. This must of course be injurious to the public, by putting it in the power of one or two rich men to raise the price of provisions at their own discretion." *Id.*

[11] Thomas M. Jorde, *The Seventh Amendment Right To Jury Trial Of Antitrust Issues,* 69 Cal. L. Rev. 1, 64–65 (1981).

*Trademarks and Monopolies,* § 7.02 (4th ed. 2001) (footnotes omitted). The fact that the type of unfair trade practice prohibited at common law differs slightly in its means from the unfair trade practice prohibited under the Unfair Sales Act is, we conclude, an insufficient distinguishing characteristic to restrict a jury trial in this case. They are essentially "counterpart[s]" in combating unfair trade practices. *See Ameritech,* 185 Wis. 2d at 697. The common law offenses discussed by Blackstone therefore leads us to the conclusion that H & S has a constitutional right to have its Unfair Sales Act claim tried to a jury because the cause of action existed, was known, and was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848.

¶ 29. We note that engrossing, regrating, and forestalling the market were all criminal offenses under the common law, rather than private causes of action, as is the claim here. As a result, an aggrieved retailer such as Village Food would not have been able to bring a civil cause of action for engrossing, regrating, or forestalling under the common law. However, as indicated above, the Unfair Sales Act contains a similar criminal provision that was part of the original act. *See* Wis. Stat. § 100.30(4). A civil action for equitable relief was contained in the original act under Wis. Stat. § 100.30(5), which was later followed by affording private litigants the ability to bring a civil action for monetary damages pursuant to Wis. Stat. § 100.30(5m). The legislative intent was clearly to provide an additional means of enforcement. The fact that one is undertaken in the civil context, rather than the criminal context, should not deprive the parties of a jury trial in this instance.

¶ 30. Other causes of action based in tort involving unfair competition, including price competition,

also lead us to the conclusion that H & S has a constitutional right to have its statutory claim tried to a jury because the cause of action created by the statute existed, was known, and was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848. As one commentator has observed: "The common law of unfair competition has always recognized that some kinds of price competition might be unlawful. The common law, however, lacked a workable definition of what prices were unfair." Peter Carstensen, *Predatory Pricing in the Courts: Reflection of Two Decisions,* 61 Notre Dame L. Rev. 928, 939 (1986) (commenting on *Mogul Steamship C. v. McGregor, Gow, & Co.,* 23 Q.B. Div. 598 (1889), which reflects that price cutting may be unlawful). Indeed, cases at the turn of the century explicitly recognized that a cause of action may result from price competition if a defendant engaged in intentional malicious conduct against the plaintiff competitor. *See, e.g., Boggs v. Duncan-Schell Furniture Co.,* 143 N.W. 482 (Iowa 1913); *Dunshee v. Standard Oil Co.,* 132 N.W. 371 (Iowa 1911); *Tuttle v. Buck,* 119 N.W. 946 (Minn. 1909); *see also Barthlomew County Beverage Co. v. Barc Beverage Corp.,* 524 N.E.2d 353, 358 (Ind. Ct. App. 1988) ("A valid common law cause of action exists for the tort of unfair competition."). These cases have been cited as support for recognizing a cause of action for intentional infliction of temporal damage to the business of another. *See* Martha W. Gerald, Recent Decision, 15 Miss. L.J. 213, 214–17 (1943) (indicating that the roots of this action is from early English cases involving such intentional conduct; *see Keeble v. Hickeringall,* 11 East 574 (1706) (the defendant was held liable for intentionally frightening wild foul that the plaintiff was attempting to capture for resale)).

494

¶ 31. The above shows that H & S had a constitutional right to have its statutory claim tried to a jury because the cause of action created by the statute existed, was known, and was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848. The Act prohibits sales below cost implemented "with the intent or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor . . . ." Wis. Stat. § 100.30(3). Like the torts based in unfair competition enumerated in the cases above, this statute limits the ability of one competitor to manipulate the market with the intent to impair the business of a competitor.

C

¶ 32. Based on the conclusions reached above, we find that the first prong of our test for the right to a jury trial under Article I, Section 5, of the Wisconsin Constitution is met. Therefore, we also need to address the question of whether such an action was legal or equitable in 1848.

¶ 33. In short, we conclude that this action was legal in nature in 1848. The plaintiff in this case seeks monetary damages for loss sustained as a result of the unfair pricing. Wis. Stat. § 100.30(5m). An action seeking money damages is one at law. *Gavahan v. Village of Shorewood*, 200 Wis. 429, 431, 228. N.W. 497 (1930). Although the statute also permits the plaintiff to seek injunctive relief, the plaintiff has not pursued this equitable relief. As a result, we conclude that the second prong of our test is satisfied.

III

¶ 34. In sum, we conclude that H & S has a constitutionally guaranteed right to a jury trial in a

private cause of action under the Wisconsin Unfair Sales Act. We therefore reverse the ruling of the circuit court.

*By the Court.*—The judgment of the circuit court is reversed.

¶ 35. JON P. WILCOX, J. *(concurring in part, dissenting in part).* I agree with the majority's statement of the test by which to determine if the right to a jury trial is protected by Article I, Section 5 of the Wisconsin Constitution. However, I do not agree with the court's conclusion that a private action under the Unfair Sales Act, Wis. Stat. § 100.30 (1999–2000),[1] is constitutionally guaranteed the right to a jury trial. Accordingly, I respectfully dissent from the judgment of the court.

¶ 36. The majority's interpretation of the first prong of its test is much broader than previous cases of this court have held it should be. In interpreting the first prong, our primary focus must be on the pre-1848 actions at law, because those are the actions for which the right to a jury trial must, according to our constitution, "remain inviolate." The logical interpretation of this language is that statutory causes of action that do not codify common law causes of action in a form substantially similar to causes of action as they existed, were known, or were recognized at common law before 1848 are not afforded such protection according to the plain language of the state constitution. Conversely, for the constitutional right to a jury trial to attach to a statutory cause of action, the modern statute must codify the pre-1848 cause of action substantially as it existed, as it was known, or as it was recognized at common law at the time the constitution was adopted.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

¶ 37. Our previous decisions support such a narrow interpretation. For example, in *General Drivers & Helpers Union v. WERB,* 21 Wis. 2d 242, 124 N.W.2d 123 (1963), a labor union alleged that the employer had violated the collective bargaining agreement by refusing to make certain payments to employees. *Id.* at 247. This action could easily have been characterized as a contract dispute, and breach of contract actions were certainly known at law in 1848. *See, e.g., Baxter v. Payne,* 1 Pin. 501 (Wis. Terr. 1845). However, this court noted that the specific action in *General Drivers* arose under a claim of unfair labor practices, which was not a cause of action that existed at the time that the Wisconsin Constitution was adopted. *Gen. Drivers,* 21 Wis. 2d at 252. This court's decision rested partly on the premise that the relationship between the parties is different than that of simple parties to a contract. *Id.* at 252. Therefore, we concluded that the litigants did not have a constitutionally protected right to a jury trial.

¶ 38. In *N.E. v. DHSS,* 122 Wis. 2d 198, 361 N.W.2d 693 (1985), we found that there was no right to a jury trial in a juvenile delinquency proceeding, because that type of action simply did not exist prior to 1848. *Id.* at 203. Similarly, in *Bekkedal v. City of Viroqua,* 183 Wis. 176, 196 N.W. 879 (1924), we held that there was no constitutional right to a jury trial because special tax assessments, like the one at issue there, did not exist when the constitution was adopted. *Id.* at 192–93.

¶ 39. In the *Ameritech* case itself, the court of appeals noted, "there is no dispute that in 1848, the State had no right to commence a civil suit to collect forfeitures for deceptive advertising or violation of the [Wisconsin Consumer Act]," and thus the court found no constitutional right to a jury trial. *State v. Ameritech,* 185 Wis. 2d 686, 698, 517 N.W.2d 705 (Ct. App.

1994). These cases make it clear that the first prong of our test should be interpreted narrowly, and the majority's decision goes against this history.

¶ 40. The majority correctly points out that none of the pre-1848 cases cited by H & S involves a cause of action that is codified in substantially the same form by the Unfair Sales Act. Majority op. at ¶¶ 24–26. However, unlike the majority, I do not find the causes of action listed in Blackstone's chapter on offences against public trade persuasive either.

¶ 41. The majority highlights three of Blackstone's causes of action—forestalling, regrating, and engrossing—and concludes that their character as examples of unfair trade practices makes them sufficiently similar to the Unfair Sales Act. I disagree. These offenses are certainly forerunners of modern antitrust and unfair trade practice statutes in general, as each involves the artificial manipulation of market factors by a market participant. However, they are only similar to the present cause of action in that general sense.

¶ 42. First, engrossing, regrating, and forestalling the market were criminal offenses under the common law, rather than private causes of action. As the majority notes, an aggrieved retailer such as Village Food would not have been able to bring a civil cause of action for engrossing, regrating, or forestalling under the common law. Majority op. at ¶ 28. This makes the old cause of action significantly different than the present one.

¶ 43. We addressed a similar issue in *Bergren v. Staples*, 263 Wis. 477, 57 N.W.2d 714 (1953). In *Bergren,* we held that there was no constitutional right to a jury trial when an employer's compensation insurer brought suit against the third-party tortfeasor in an attempt to be compensated for a worker's compensation claim. *Id.* at 482–83. Despite the various tort claims that could be

brought in such a case, we recognized that the *only* way the employer's compensation insurer had a cause of action against the third-party tortfeasor was under Wis. Stat. § 102.29(1). *Id.* Because the claim was created solely by statute, we held that no constitutional right to a jury trial attached.

¶ 44. Here, the same reasoning applies. The sole reason that Village Food is able to bring the cause of action in this case is because of the existence of the statute. Therefore, the cause of action could not have existed, been known, or been recognized at common law prior to 1848. For that reason alone, I would hold that this cause of action does not meet the test adopted by the court.

¶ 45. Furthermore, the nature of each of the Blackstonian offenses cited by the majority is different enough from the civil cause of action under the Unfair Sales Act that I cannot reasonably say that they are substantially codified by the statute. Regrating and engrossing are more akin to modern anti-monopoly causes of action, as they each involved amassing goods in order to artificially raise market prices. Forestalling the market involved preventing goods from getting to market in order to artificially raise prices. Conversely, the present cause of action involves the violation of a minimum price requirement, statutorily set according to a complex formula, as it applies to the sale of a specific type of product. The Unfair Sales Act as a whole provides a detailed scheme for the regulation of commercial pricing practices in specific markets. The significant differences between a cause of action under this scheme and under Blackstone's causes of action are obvious.

¶ 46. The simple fact that the present cause of action involves behavior that affects market prices is, in my opinion, simply not sufficient to show that the

pre-1848 claims were substantially codified in a form as they existed then. In essence, the majority's holding is that the mere classification of the cause action as an "unfair trade practice" is enough to constitutionally guarantee the right to a jury trial. This not only goes against our precedent, but essentially renders the test a nullity, as present causes of action of all sorts assessed under this test will only have to be compared generally to past causes of action in order to invoke the constitutional protection to a trial by jury. This result comports neither with the plain language nor the intent of the constitutional provision.

¶ 47. Because I would find that the Unfair Sales Act does not substantially codify a pre-1848 cause of action as it existed, was known, or was recognized at common law then, I would conclude that the first prong of the test adopted by the court has not been met. Therefore, I would not find it necessary to address the question of whether such an action was legal or equitable in 1848.

¶ 48. In sum, although I agree with the test adopted by the majority, I would conclude that H & S does not have a constitutionally guaranteed right to a jury trial in a private cause of action under the Wisconsin Unfair Sales Act. Although it has not yet chosen to do so, I would also note that the legislature has the ability to amend the act to create a statutory right to a jury trial. *See Bergren,* 263 Wis. at 483. I would affirm the ruling of the circuit court, and find that it properly granted Village Food's motion to strike H & S's demand for a jury trial in this case.

¶ 49. For the foregoing reasons, I respectfully dissent.

¶ 50. I am authorized to state that Justices N. PATRICK CROOKS and DIANE S. SYKES join this opinion.